## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CRAIG LATHON,

                  Petitioner,

v.

MICHAEL MEISNER,

                  Respondent.

Case No. 21-CV-224-JPS

**ORDER**

## 1.     INTRODUCTION

Petitioner Craig Lathon ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1-1. The petition, filed February 19, 2021, asserts two grounds for relief, each of which Respondent claims suffers from some defect that prevents the Court from addressing its merits. *See* ECF No. 25 at 1. Specifically, Respondent argues that Petitioner's first ground for relief is untimely and does not satisfy the actual innocence exception, and that Petitioner's second ground for relief is "procedurally defaulted and not cognizable in federal habeas corpus." *Id.*

For the reasons discussed herein, the Court will grant Respondent's motion to dismiss, ECF No. 24, and dismiss the action with prejudice.

## 2.     BACKGROUND

### 2.1     The Facts Giving Rise to Petitioner's Criminal Cases

This § 2254 petition arises out of Petitioner's convictions in Milwaukee County Circuit Court Case Nos. 1991CF911917A and 1991CF913878.[1] Those consolidated cases arose out of the deaths of victims

---

[1] *See State of Wisconsin v. Craig Feliz Lathon,* 1991CF911917A (Milwaukee Cnty. Cir. Ct. 1991), available at

O.C. Brown ("Brown"), Michael White ("White"), and Craig Burnett ("Burnett"), each of whom was shot at close range with a nine-millimeter handgun in the spring of 1991. *State v. Lathon*, Nos. 93-0598-CR, 93-0599-CR, 1993 Wisc. App. LEXIS 1458, at *2 (Wis. Ct. App. Nov. 16, 1993).

### 2.2 Procedural Background

Petitioner was originally charged on June 7, 1991 with the first-degree intentional homicide of Brown. *Lathon*, 1993 Wisc. App. LEXIS at *2. Some months later, on November 13, 1991, he was additionally charged with the first-degree intentional homicides of White and Burnett. *Id*. The State moved to consolidate the two cases, and, following a hearing thereon, the motion was granted. *Id.*

The cases proceeded to trial in April 1992. *Id*. On April 12, 1992, the jury returned guilty verdicts on all three counts. The court sentenced Petitioner to life imprisonment on each count, and his parole eligibility date was set for January 1, 2100. *Id.*

On January 25, 1993, Petitioner moved the trial court for postconviction relief. On March 3, 1993, the trial court denied the motion. Petitioner appealed to the Wisconsin Court of Appeals. *See generally id.*

Before the Wisconsin Court of Appeals, Petitioner presented various grounds for relief. None of those grounds are renewed here, and so the Court will not delve into them. Petitioner sought review before the Wisconsin Supreme Court. The Court denied the petition on January 18, 1994. *State v. Lathon*, 513 N.W.2d 407 (Wis. 1994).

---

https://wcca.wicourts.gov/caseDetail.html?caseNo=1991CF911917A&countyNo=40&index=0&mode=details (last visited May 30, 2023); *State of Wisconsin v. Craig Feliz Lathon*, 1991CF913878 (Milwaukee Cnty. Cir. Ct. 1991), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=1991CF913878&countyNo=40&index=0&mode=details (last visited May 30, 2023).

Over a decade later, Petitioner unsuccessfully moved the trial court for a new trial under Wis. Stat. § 974.06**.** He returned to the Wisconsin Court of Appeals, but he was unsuccessful yet again. *See generally State v. Lathon*, Nos. 2019AP36 and 2019AP37, 2020 Wisc. App. LEXIS 335 (Wis. Ct. Ap. 2020).

As described by the Wisconsin Court of Appeals, Petitioner's § 974.06 motion was "based on purported newly discovered evidence which he contends shows that he was convicted based on the perjured trial testimony of three witnesses who conspired to frame him." *Id.* at *1. As characterized by the court, Petitioner argued that "based on purported newly discovered evidence, the State failed to disclose exculpatory evidence to the defense before trial in violation of *Brady v. Maryland*, 373 U.S. 83 . . . (1973)" and that the "trial court erred in not granting an evidentiary hearing on his motion." *Id*. The Wisconsin Court of Appeals affirmed the denial of Petitioner's § 974.06 motion. It wrote that Petitioner had "failed to meet his burden to show the need for an [evidentiary] hearing." *Id.* at *18. It also agreed with the State that "even assuming that [the new witness] would testify credibly and consistently with his affidavit and his alleged statements to the prosecutor were suppressed, [Petitioner] has not shown a reasonable probability that this disclosure would have produced different verdicts." *Id*. at *26–27.

Petitioner again petitioned the Wisconsin Supreme Court. Petitioner there presented three issues for review: 1) "Whether evidence discovered after [Petitioner's] trial and appeal regarding Mose Cullins [("Cullins")], Johnny Winston [("Winston")], and Steve Younker [("Younker")], the state's three main witnesses on two of the three homicide charges, mandates grant of a new trial as a matter of due process . . . ," 2) "Whether

the state's failure to inform the defense when Calvin Robinson [("Robinson")] recanted his prior allegations against [Petitioner] and revealed evidence of the conspiracy to frame [Petitioner] prior to trial denied [Petitioner] due process and mandates a new trial," and 3) "Whether the unavailability at trial of evidence of [Petitioner's] actual innocence on two of the three charges and of the state's primary witness' conspiracy to nonetheless frame him for those homicides justify reversal on all charges in the interests of justice under Wis. Stat. § 751.06 or this Court's inherent authority . . . ." ECF No. 25-1 at 4–5. The Wisconsin Supreme Court denied the petition for review on November 18, 2020. *State v. Lathon*, Nos. 2019AP36 and 2019AP37, 2020 Wisc. LEXIS 545 (Wis. Nov. 18, 2020).

### 3. LAW & ANALYSIS

Rule 4 authorizes a district court to dismiss a petition summarily where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Thus, Rule 4 provides the district court the power to dismiss both those petitions that do not state a claim upon which relief may be granted and those petitions that are factually frivolous. *See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Under Rule 4, the Court analyzes preliminary obstacles to review, including whether the petitioner has complied with the statute of limitations, exhausted available state remedies, avoided procedural default, and set forth cognizable claims.

#### 3.1 Ground One

Petitioner's first ground for relief ("Ground One") is that the "state's failure to inform the defense when Calvin Robinson recanted his prior allegations against Lathon and, prior to trial, revealed existence of the conspiracy between Cullins, Winston, and Younker to frame Lathon denied

Lathon due process and mandates a new trial." ECF No. 1-1 at 9. In other words, Ground One alleges a *Brady* violation.

The parties do not dispute that Ground One is untimely, but they dispute whether its untimeliness is saved by the actual innocence exception. ECF No. 25 at 1. Petitioner asserts that although he "did not file this petition within the one-year deadline provided under AEDPA, that deadline does not apply where, as here, the constitutional claim raised is supported by newly discovered evidence that the petitioner is actually innocent." ECF No. 1-1 at 9.

As a general matter, courts have been willing to consider late habeas petitions in two circumstances. The first is commonly known as the "actual innocence" exception, i.e., if the petitioner "'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless error.'" *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).[2] "The actual innocence gateway of *Schlup* demands more than a possible inference that might lead a juror to acquit. To meet his heavy burden, [a petitioner] must show it is likely that no reasonable juror would have convicted." *Id*. at 899. If a petitioner meets this burden, the gateway authorizes a court to ignore procedural infirmities such as untimeliness. *Id*. at 895-96. The actual innocence standard is "demanding" and seldom met. *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted).

---

[2] The second circumstance is "equitable tolling," which is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (quotation omitted). Petitioner does not rely on this exception, and so the Court will not discuss it. *See* ECF No. 18 at 3 n.2 ("Lathon does not rely on the principle of equitable tolling.").

But Respondent argues, essentially, that the actual innocence exception is no longer viable. Specifically, Respondent argues that *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), to the extent that it held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations," is no longer good law. ECF No. 25 at 5.

In *Perkins*, the Supreme Court explicitly addressed the question that is at issue in this case: "in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in [AEDPA]," "if the petitioner does not file her federal habeas petition . . . within one year of 'the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence,' . . . can the bar be overcome by a convincing showing that she committed no crime?" 569 U.S. at 386 (quoting 28 U.S.C. § 2244(d)(1)(D)). The Court answered that question in the affirmative, writing that a demonstration of actual innocence can overcome AEDPA's statute of limitations. *Id*. at 399. Writing for the dissent, Justice Scalia argued that the decision was inappropriate because "we have no 'equitable' power to discard statutory barriers to habeas relief" and therefore "cannot simply extend judge-made exceptions to judge-made barriers into the statutory realm." *Id*. at 404 (Scalia, J., dissenting).

Respondent now points the Court to *Brown v. Davenport,* 142 S. Ct. 1510 (2022). ECF No. 25 at 4. Respondent believes that the Court's decision in *Davenport* has invalidated the actual innocence exception. "*Perkins* was a 5-4 decision, and only two of the justices in the majority remain on the Court today. The Supreme Court has since switched course and adopted the view

of the four *Perkins* dissenters that the courts have no equitable power to ignore limitations on habeas relief that Congress has imposed." *Id*. at 5. According to Respondent, "[e]arlier this year, the six-justice *Davenport* majority—consisting of the three remaining *Perkins* dissenters plus three new justices—adopted Justice Scalia's view, holding 'When Congress supplies a constitutionally valid rule of decision, federal courts must follow it.'" *Id*. (quoting *Davenport*, 142 S. Ct. at 1520). The result of this, Respondent claims, is an "abrogat[ion] [of] *McQuiggin v. Perkins* . . . to the extent that *Perkins* held that the actual-innocence exception obviates the limitations period of § 2244(d)(1)." ECF No. 29 at 1.

In response, Petitioner insists that *Perkins* remains good law and has not been overruled or abrogated. ECF No. 28 at 4. Petitioner writes that Supreme Court "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Id*. (quoting *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016)). Petitioner points out that the Court in *Davenport* did not "even mention *Perkins* or § 2244(d) or the 'actual innocence' standard." *Id*.

The Court agrees with Petitioner. Perhaps, at best, *Davenport* cast doubt on the continued viability of *Perkins*, but it did not overrule or abrogate *Perkins* in any sense of the terms. As Petitioner notes, the Court in *Davenport* did not reference *Perkins*, the actual innocence exception, or the statute of limitations imposed by § 2244(d). Instead, the Court in *Davenport* discussed the language of § 2254(d)(1)—AEDPA's requirement that the petitioner show that the claim adjudicated on the merits in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Davenport*, 142 S. Ct. at

1520. It held that "AEDPA . . . must be satisfied"—that the petitioner "must satisfy § 2254(d)(1) to secure federal habeas relief." *Id*.

In the absence of further guidance and authority, the Court is in no position to assume that *Perkins* has been overruled or abrogated and that the actual innocence exception is no more. Respondent points to no other cases that have concluded, or even contemplated, that *Perkins* is no longer good law. Nor has the Court, in its own research, found any such case.

It is the Supreme Court's "prerogative alone to overrule one of its precedents." *Bosse*, 580 U.S. at 3. The Supreme Court has not clearly done so with respect to *Perkins*. Respondent's reliance on the concept of "doctrinal development" similarly does not compel the Court. Respondent argues that "*Davenport* is a 'doctrinal development[]' that indicates *Perkins* is no longer good law on the relevant issue," ECF No. 29 at 2 (quoting *Baskin v. Bogan*, 766 F.3d 648, 659 (7th Cir. 2014) ("Although even a decision without opinion is on the merits and so binds lower courts, the Supreme Court carved an exception to this principle of judicial hierarchy . . . for 'when doctrinal developments indicate otherwise.'") (citation omitted)), but for the reasons already noted, the Court is not convinced. *See Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 497 (7th Cir. 2018) ("To the extent there might be any theoretical room for departing from the summary affirmance in [precedent], it would take much stronger signals from the Court to do so."); *Latta v. Otter*, 779 F.3d 902, 908 (9th Cir. 2015) ("Rather than heeding the clear statement that 'the lower courts are bound by summary decisions by th[e Supreme] Court until such time as the Court informs [them] that [they] are not,' the panel searches for 'doctrinal developments' that, when interpreted *just so*, imply that [the case at issue] is no longer good law. Apparently the panel believes the Supreme Court,

rather than speaking clearly when it overrules dispositions on the merits, 'informs' the lower courts of an overruling with so many winks and nods.") (citations omitted).

Accordingly, the Court will proceed under the assumption that the actual innocence exception remains available to Petitioner to cure the untimeliness of his petition. The Court need not, therefore, address the parties' arguments regarding when the clock began to run on Ground One. In any event, it was the Court's understanding that the parties had already agreed that Ground One was "untimely." ECF No. 22 at 2; ECF No. 1-1 at 9 (petition conceding that "Lathon did not file this petition within the one-year deadline provided under AEDPA"). The ultimate issue, therefore, will be whether the actual innocence exception applies to save Ground One from its untimeliness. That matter is not addressed in the instant briefing, but Petitioner refers the Court back to the briefing on the previous motion to dismiss, ECF No. 14.

There, Petitioner argued that the actual innocence standard is satisfied because the state's "eyewitness evidence on" White's and Burnett's murders was "extremely weak," and that therefore "the evidence concealed by the state affirmatively showing that Lathon was not involved in those homicides and that Winston, Younker, and Cullins nonetheless had conspired to frame him for it no doubt would have a major impact on a reasonable jury." ECF No. 18 at 9. Petitioner argues that "Zrinsky's and Burzcyk's claimed identifications of Lathon regarding the White homicide were questionable at best"; that "[w]hen shown a lineup that included Lathon, Burzcyk identified someone else and only identified Lathon at trial after having seen him in the newspaper and on TV after the lineup," and that "Zrinsky likewise failed to identify Lathon in a lineup and only

identified him at trial after having seen Lathon and reports of his arrest on TV." *Id*. at 9–10. Similarly, Petitioner argues that another witness's "testimony purporting to identify Lathon in the Burnett homicide is similarly underwhelming," since the witness, Jeannette Ollie ("Ollie"), could not identify Petitioner "until after she had viewed and identified a photo of him wearing an anchor pendant that she claimed looked like one stolen from Burnett." *Id*. at 10. The "evidence of Lathon's actual innocence . . . acts to further counter the already questionable identifications by Zrinsky, Burczyk, and Ollie, as well as the 'cooperating witnesses'' own trial allegations against Lathon." *Id*. at 14.

Respondent counters that the fact that Petitioner did not raise the "newly discovered evidence/affidavit evidence in state court until" nearly twenty-five years after his conviction diminishes the reliability of the purported newly discovered evidence. ECF No. 21 at 3–4. He also points out that the relevant affidavits upon which Petitioner now relies (which, it bears mentioning, Petitioner does not actually provide to the Court) are from 2003, 2008, and 2015, and that Petitioner therefore waited, apparently inexplicably, for many years before acting on them. *Id*. Additionally, Respondent points to the state court's conclusion that the State had presented substantial additional evidence against Petitioner beyond that provided by Winston and Cullins. *Id*. at 6.

The Court agrees with Respondent that the high standard for actual innocence is not met here. "To pass through the actual-innocence gateway to a merits review of a procedurally barred claim, the petitioner must have 'new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016)

(quoting *Schlup,* 513 U.S. at 324) (emphasis added); *see also Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.").

It is far from clear that the affidavits upon which Petitioner relies can be described as "reliable" for purposes of actual innocence. Several of them are over a decade old and were not presented to a court until nearly three decades after Petitioner's conviction. These factors may be considered in assessing their reliability. *Freeman v. Trombley,* 483 F. App'x 51, 57 (6th Cir. 2012). Petitioner argues that the delay in raising this newly discovered evidence is attributable to his need to obtain representation, and then to his counsel's need to obtain records and discovery and balance his workload. ECF No. 18 at 15, nn.5, 6. These reasons, however, seem insufficient to justify a delay of such a significant length. *See Perkins,* 569 U.S. at 399 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

Petitioner also argues that the "fact that these three unrelated witnesses independently reached out to Lathon to expose the fraud when none of them had anything to gain by doing so supports their reliability." ECF No. 18 at 14. The contention that those witnesses had nothing to gain by doing so is conclusory and unsupported.[3]

---

[3] *See Arnold v. Dittman,* 901 F.3d 830, 839 (7th Cir. 2018) ("It is entirely possible that [the witness's] recantation is the product of guilt and/or pressure from family members rather than a belated confession of what is true.").

Case 2:21-cv-00224-JPS   Filed 05/31/23   Page 11 of 22   Document 30

Moreover, the argument is countered by the overwhelming tendency of courts to view recanting affidavits with "extreme suspicion." *See, e.g., United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) (citation omitted). Courts have held that recanting affidavits—particularly ones coming into existence years after a conviction—are the type of evidence that "falls short of the demanding actual-innocence standard." *Negron v. Nicolson*, No. 12-cv-00014, 2018 U.S. Dist. LEXIS 184330, at *9 (N.D. Ill. Oct. 29, 2018) (two affiants claiming that petitioner was "not the shooter" insufficient to meet actual innocence standard); *see also Jones v. Taylor*, 763 F.3d 1242, 1248 (9th Cir. 2014) ("Jones asserts his innocence based on recantation testimony alone . . . [this type of] proof is even less reliable than the evidence rejected in [other cases] . . . ."); *Bennett v. Clark*, No. 16-3687, 2017 U.S. Dist. LEXIS 15466, at *15 n.13 (E.D. Penn. Feb. 1, 2017) ("*Schlup* sets a supremely high bar for new evidence of innocence, and [n]either the recantation of a witness who did not even testify at trial nor the second-hand retelling of a jailhouse confession can clear it.") (internal quotation marks and citation omitted); *Wiley v. Cain*, No. 16-3408, 2017 U.S. Dist. LEXIS 220017, at *22–23 (E.D. La. Oct. 17, 2017) (collecting cases) ("Brown's affidavit was not executed until . . . more than *four years* after petitioner's conviction. Such a long delay likewise casts doubt on the validity of a recantation.") (citing *Olson v. United States*, 989 F.2d 229, 232 (7th Cir. 1993); *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010)).

And in any event, even if the jury were to have heard this purported newly discovered evidence, it would still also have had before it multiple other witnesses against Petitioner. And as the state courts acknowledged, it is not clear that the affidavits would bear any significant probative weight: "Robinson did not claim to have any direct knowledge about any of the

three homicides. Moreover, he purported to have learned 100 percent of what he would testify to while confined in jail and communicating with people whom he would call perjurers." ECF No. 1-1 at 75.

In sum, Petitioner has not persuaded the Court that his is one of the "rare" cases in which the actual innocence exception excuses the untimeliness of his proffered ground for relief. *See Perkins,* 569 U.S. at 386. Accordingly, the Court will deny Ground One as untimely.

### 3.2    Ground Two

Petitioner's second ground for relief ("Ground Two") relates to the Wisconsin Court of Appeals' decision on Petitioner's § 974.06 motion—namely, its conclusion that he had not shown the need for an evidentiary hearing. *See* ECF No. 1-1 at 10–11. According to Petitioner, "[t]he state circuit court originally granted [him] an evidentiary hearing on his newly discovered evidence claim . . . . The Wisconsin Supreme Court, however, subsequently altered Wisconsin law," denying Petitioner's opportunity for said hearing. *Id.*

Ground Two avers that "[a]lthough requiring reversal and a new trial based on newly discovered evidence that demonstrates a reasonable probability of a different result is a matter of due process under the Wisconsin Constitution rather than the Federal Constitution, the state's application of arbitrary and irrational evidentiary standards to that process here violates Lathon's rights to due process under the. U.S. Constitution." *Id.* at 10. Specifically, Petitioner writes that the "Wisconsin Supreme Court . . . irrationally and arbitrarily expand[ed] the definition of 'cumulative' evidence (which cannot justify a new trial) to include evidence that corroborates the defendant's innocence on disputed factual issues," "likewise irrationally and arbitrarily required that newly discovered and

Case 2:21-cv-00224-JPS   Filed 05/31/23   Page 13 of 22   Document 30

presumptively reliable prior statements of state's witnesses that, contrary to their trial testimony, exonerated the defendant must be corroborated by other newly discovered evidence," "irrationally and arbitrarily limited such corroboration to exclude newly discovered exculpatory prior inconsistent statements from multiple state's witnesses . . . ." and "irrationally and arbitrarily imposed a new requirement, arrogating to itself the determination of whether sworn affidavits by witnesses to the exculpatory prior inconsistent statements were reliable enough to require a hearing." *Id*. at 11.

As to this ground, the Court previously ordered supplemental briefing on timeliness and exhaustion (or lack thereof). ECF No. 22. But because the Court agrees with Respondent that Ground Two is not cognizable in habeas corpus, it need not ultimately address the issues of timeliness and exhaustion.

Respondent argues that Ground Two is not cognizable in habeas corpus because it "attacks a collateral proceeding, not the conviction." ECF No. 25 at 15. In so arguing, Respondent relies on *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986).

In response, Petitioner asserts that the state's claim that "habeas can *only* address claims directly attacking the conviction on federal constitutional grounds and that constitutional violations during the post-conviction or appellate process may not be raised on habeas" is "demonstrably false." ECF No. 28 at 12. Petitioner points to *Evits v. Lucey*, 469 U.S. 387 (1985), wherein the Supreme Court "upheld the grant of federal habeas relief based . . . on the denial of counsel on . . . direct appeal," *id*., and to *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009), ECF No. 28 at 1–2.

However, in *United States ex rel. Willhite v. Walls,* the court addressed the petitioner's argument that the "circuit court's failure to hold an evidentiary hearing on his post-conviction petition prevented him from asserting his claim[] that . . . he was actually innocent, based on newly-acquired evidence . . . ." 241 F. Supp. 2d 882, 890 (N.D. Ill. 2003). The court concluded that such a claim did not constitute a substantive claim for habeas relief. "As a rule, a prisoner has no federal constitutional right to an evidentiary hearing on a post-conviction petition that he files in state court." *Id.* (citation omitted). "The Constitution does not require states to provide a post-conviction proceeding to individuals who are convicted of crimes." *Id.* (citation omitted). "An alleged deprivation of rights in a state post-conviction proceeding cannot provide the basis for federal habeas relief under 28 U.S.C. § 2254, which is available only for violations of federal law that occur during a criminal conviction in state court." *Id.* (citation omitted). "Federal habeas corpus cannot provide relief from error in a state collateral proceeding where the error has nothing to do with the reason for the defendant's confinement." *Id.* (citation omitted). *See also Hamlet v. Warden,* No. 1:20-cv-01520-JPH-DLP, 2022 U.S. Dist. LEXIS 21231, at *8 (S.D. Ind. Feb. 7, 2022) ("Although [petitioner] characterizes this claim as a constitutional issue, it is instead a challenge to Indiana's post-conviction procedures and therefore not cognizable on habeas review.") (citing *Jones v. Butler*, 778 F.3d 575 (7th Cir. 2015)).

This district has concluded the same and disallowed habeas petitioners from proceeding on analogous grounds even more recently:

> As to ground one, while a petitioner can assert a claim of due process violation of federal habeas review, the petition alleges that the circuit court violated the petitioner's due process rights by . . . denying him an evidentiary hearing. The petition

refers to a post-conviction motion under Wis. Stat. § 974.06, the procedure that allows a convicted person to collaterally attack his conviction in state court after the time for a direct appeal has expired. Wis. Stat. § 974.06(1). "No constitutional provision or federal law entitles [a petitioner] to any state collateral review." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 2006) . . . . "Unless collateral review violates some independent constitutional right . . . errors in state collateral review cannot form the basis for federal habeas relief." *Id.* (citations omitted). Although the Seventh Circuit has suggested that inexcusable delay in processing a *direct criminal appeal* may violate due process, "the same does not hold true for delay in processing a collateral appeal." The court will not allow the petitioner to proceed on the ground one claim. *See Toles v. Barton*, No. 05-C-398, 2007 U.S. Dist. LEXIS 10021, . . . at *5 (E.D. Wis. Feb. 9, 2007) (petitioner's "claims that he was denied due process when the Wisconsin courts refused his request for a hearing on his § 974.06 motion . . . is not cognizable on federal habeas review").

*Devroy v. Boughton*, No. 22-cv-727-pp, 2022 U.S. Dist. LEXIS 203949, at *6–7 (E.D. Wis. Nov. 9, 2022); *see also Gladney v. Pollard,* No. 21-cv-606-pp, 2022 U.S. Dist. LEXIS 57986, at *11–12 (E.D. Wis. Mar. 30, 2022) ("To the extent the petitioner argues that on collateral review the court of appeals violated his rights under the Due Process Clause, the court will deny the petition for failing to state a cognizable *habeas* claim. 'It is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing.'") (internal citation omitted); *Diaz v. Butler*, No. 14-cv-8042, 2021 U.S. Dist. LEXIS 12 (N.D. Ill. Jan. 4, 2021) ("Petitioner's arguments amount to challenges of the state court's process for resolving state law issues, and habeas relief 'is unavailable to remedy errors of state law.' . . . This is true even though [Petitioner] attempts to frame this claim as a federal one by stating that the 'review was fundamentally unfair and resulted in a denial of due

process' . . . . Petitioner cannot 'transform a state-law issue' regarding alleged errors in his postconviction proceedings 'into a federal one merely by asserting a violation of due process.'") (quoting *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) & *Mishler v. Superintendent*, No. 3:14-CV-1953-JVB, 2016 WL 1658672, at *5 (N.D. Ind. Apr. 26, 2016)); *Kirgan v. Morgenthaler*, No. 19-cv-779-NJR, 2020 U.S. Dist. LEXIS 157605, at *18 (S.D. Ill. Aug. 31, 2020) ("[Petitioner] contends that the state court's denial of a hearing is not an error of state law, but rather an infringement upon the fundamental fairness that is required in the process. . . . That argument fails because the State is not required to provide a procedure for collateral attack on a criminal conviction, and, when it does, due process rights do not attach . . . It follows that an error in state collateral review proceedings is not a cognizable federal habeas claim.") (quotation omitted).

Other courts and circuits have concluded the same. "A federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief because the states have no constitutional obligation to provide post-conviction remedies." *Simpson v. Warren*, 662 F. Supp. 2d 835, 847 (E.D. Mich. 2009) (citing *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007)); *Mathison v. Cunningham*, No. 98-457-M, 2000 U.S. Dist. LEXIS 16448, at *8–9 (D.N.H. Oct. 19, 2000) (noting that, with only a single exception, "every circuit court of appeals that has addressed this issue has concluded that the writ of habeas corpus is not an appropriate means by which to challenge alleged deficiencies in a state court proceeding that was collateral to the petitioner's trial"); *Branch v. Sec'y*, No. 4:20-cv-441-WS/MJF, 2022 U.S. Dist. LEXIS 75043, at *24–25 (N.D. Fla. Mar. 10, 2022) ("A prisoner's challenge to the process afforded him in a state postconviction proceeding is not a cognizable claim for federal habeas relief, because such

a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself."); *Hardin v. Jaques,* No. 17-cv-02626-CMA, 2018 U.S. Dist. LEXIS 75776, at *18–19 (D. Colo. May 4, 2018) ("[A] claim of constitutional error that focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration . . . states no cognizable federal habeas claim") (quotation omitted); *Luxama v. Crews*, No. 13-61202-CV-ZLOCH, 2014 U.S. Dist. LEXIS 133955, at *30 (S.D. Fla. Feb. 20, 2014) ("Finally, if the petitioner is claiming that his due process rights were violated during the state post-conviction proceeding, because he did not receive an evidentiary hearing on his claim of counsel's conflict of interest, such an assertion states no basis for federal habeas corpus relief. A state court's failure to hold an evidentiary hearing in post-conviction proceedings in no way undermines the validity of a petitioner's conviction and sentence . . . .").

As Respondent notes, Petitioner's reliance on *Evits* provides little guidance. The proceeding at issue in *Evits* was a direct appeal rather than a collateral proceeding. A defendant has a constitutional right of direct appeal, but they do not have a constitutional right to additional post-conviction proceedings, such as that provided through Wis. Stat. § 974.06. *See Pennsylvania v. Finley,* 481 U.S. 551, 556–57 (1987) ("Postconviction relief . . . is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief . . . ."). The Supreme Court in *Finley* declined the respondent's attempt to be guided by *Evits,* ultimately concluding that "the decision below rests on a premise that we are unwilling to accept—that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact

form such assistance must assume. On the contrary, in this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review." *Id*. at 559.

It is also not entirely clear to the Court that *Osborne* fully supports Petitioner's argument. There, the Supreme Court addressed the question of whether Osborne "has a right under the Due Process Clause to obtain postconviction access to the State's evidence for DNA testing" after Osborne "su[ed] state officials under 42 U.S.C. § 1983," "claim[ing] that the Due Process Clause . . . gave him a constitutional right to access . . . DNA evidence . . . ." *Osborne*, 557 U.S. at 60–61. The Supreme Court there was specifically faced with Osborne's argument that "access to the State's evidence is a 'process' needed to vindicate his right to prove himself innocent and get out of jail" and that he essentially had an entitlement or liberty interest to "prove his innocence even after a fair trial has proved otherwise." *Id*. at 67.

The Supreme Court agreed, concluding that Osborne "does . . . have a liberty interest in demonstrating his innocence with new evidence under state law." *Id.* at 68. The Supreme Court went on, however, to write that the "Court of Appeals went too far . . . in concluding that the Due Process Clause requires that certain familiar preconviction trial rights be extended to protect Osborne's postconviction liberty interest." *Id*. at 68. The Supreme Court reminded its audience that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man," and that "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 68–69. The Supreme Court concluded that there was "nothing inadequate about the procedures Alaska has provided to

Case 2:21-cv-00224-JPS   Filed 05/31/23   Page 19 of 22   Document 30

vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence." *Id.* at 69.

Importantly, and as noted, Osborne brought the action under § 1983, and did not "dispute that a federal actual innocence claim (as opposed to a DNA access claim) would be brought in habeas." *Id*. at 72. The context in *Osborne* was also distinct in that it was the State, not the petitioner, who "possess[ed] physical evidence that, if tested, [would] conclusively establish whether" Osborne committed the crime for which he was convicted. *Id*. at 87 (Stevens. J., dissenting). And to the extent that the Supreme Court mentioned habeas, it did so on a hypothetical basis: "If such a habeas claim is viable . . . ." *Id*. at 72.

Petitioner acknowledges the distinction of the habeas context versus the § 1983 context, but he does not adequately explain to the Court why that distinction is immaterial. *See* ECF No. 28 at 3 ("And finally, although conceding, as it must, that Lathon's Due Process claim is firmly based in *Federal* due process and would form the basis for a *Federal* cause of action under 42 U.S.C. § 1983, *see Osborne*, 557 U.S. at 68, 70, the state nonetheless argues that it is not cognizable in federal habeas.").

Petitioner has not pointed the Court to any *habeas* case in which the ground for relief here raised—that a state's evidentiary standards on collateral postconviction review effected a deprivation of the petitioner's due process rights—has been accepted as cognizable in habeas corpus. Nor has the Court located any such case. To the contrary, the Court has found many cases indicating otherwise. Petitioner does not acknowledge any such contrary cases, nor does he explain why they are incorrect in light of *Osborne*. It is ultimately Petitioner's burden to demonstrate that the writ

should issue, and he has not met that burden. *Towers v. Brannon*, No. 17-C-7481, 2022 U.S. Dist. LEXIS 161181, at *22 (N.D. Ill. Sept. 7, 2022) ("If the petitioner satisfies the § 2254 prerequisites, he must then persuade the court that 'law and justice require' habeas relief.") (quoting *Davenport*, 142 S. Ct. at 1524).

Accordingly, the Court will deny Ground Two as incognizable in habeas corpus.

## 4.    CONCLUSION

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). No reasonable jurists could debate whether Petitioner has satisfied the actual innocence exception, nor whether Ground Two is cognizable in habeas corpus. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Respondent's second motion to dismiss, ECF No. 24, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's § 2254 petition, ECF Nos. 1, 1-1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED.**

The Clerk of Court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

---

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.